**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
**SENIOR MAGISTRATE IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

December 23, 2025

Nicholas D. Mozal
Adriane M. Kappauf
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801

Sean J. Bellew
Bellew LLC
2961 Centerville Road, Suite 302
Wilmington, DE 19808

Re: *Theodore Barr v. Genesis CMG Holdings, LLC*,
C.A. No. 2025-0981-SEM

Dear Counsel:

As authorized by the LLC Act, the company before me promised to advance its directors' and officers' expenses incurred defending litigation relating to or arising out of their performance of their duties on behalf of the company. The company concedes, to some extent, that advancement was triggered when it sued a former officer and director for alleged breaches of an employment agreement. It argues, however, that it has amended its complaint and removed the triggering allegations and claims. I disagree. As more fully explained in this letter decision, the amended complaint did not extinguish advancement; the plaintiff is entitled to advancement and is awarded fees on fees. The plaintiff's motion for summary judgment is granted, and the defendant's motion to dismiss is denied.

## I. BACKGROUND

Theodore Barr (the "Plaintiff") initiated this action seeking to enforce his right to advancement from Genesis CMG Holdings, LLC (the "Defendant"). The matter proceeded before me on an expedited basis; it was reassigned to me on October 1, 2025,[1] an amended complaint was filed on October 7, 2025,[2] and I heard oral argument on the parties' competing motions on December 3, 2025.[3]

The material facts are not in dispute.

**A. The Agreements**

The Plaintiff co-founded Converze Media Group, LLC ("Converse") a California-based media agency that developed and executed direct response advertising strategies for its clients.[4] In 2023, the Plaintiff sold his 45% equity interest in Converze to the Defendant,[5] and as part of that transaction, the parties entered into the Amended and Restated Limited Liability Company Agreement of the Defendant (the "LLC Agreement").[6]

---

[1] Docket item ("D.I.") 8.

[2] D.I. 10.

[3] D.I. 22.

[4] D.I. 10 ("Am. Compl.") at ¶ 15.

[5] Am. Compl. ¶ 16–17.

[6] *See* Am. Compl. Ex. A (the LLC Agreement). The Plaintiff also, to some extent, argued entitlement through a "Converze Agreement." *See* D.I. 15 Ex. 2. But the Plaintiff relied solely on the LLC Agreement in the pending motions, thus, I need not address the Converze Agreement herein.

Section 12.5 of the LLC Agreement governs advancement, and provides:

> To the fullest extent permitted by applicable law, Losses incurred by a Covered Person in defending any Actions relating to or arising out of their performance of their duties on behalf of the Company shall, from time to time, be advanced by the Company prior to the final disposition of such Actions upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall ultimately be determined by a court of competent jurisdiction that the Covered Person is not entitled to be indemnified as authorized in Section 12.4.

A "Covered Person" is defined in Section 1.1, which provides:

> "Covered Person" means a current or former Member or Director, an Affiliate of a current or former Member or Director, Tax Matters Partner, Partnership Representative, any officer, director, shareholder, partner, member, employee, representative or agent of a current or former Member or Director or any of their respective Affiliates, or any current or former director, officer, manager, employee or agent of the Company or any of its Affiliates.

Several of the other defined terms used in Section 12.5 are defined in the indemnification section of the LLC Agreement, Section 12.4. Within Section 12.4, "Losses" is defined to include: "any . . . cost or expense (including reasonable attorneys' and accounting fees and expenses and costs of investigation)[.]" "Actions" is defined as "any threatened, pending or completed demands, claims, actions, suits or proceedings, whether civil, criminal, administrative, investigative, arbitrative or otherwise, including an action by or in the right of the" Defendant.

Under the LLC Agreement, the Plaintiff was named as an initial director of the Defendant. The Plaintiff also remained responsible for client relationships, and to that end, entered into an employment agreement with the Defendant to serve as the Chief Client Officer ("CCO"). To that end, the Plaintiff executed a "Restrictive Covenants Agreement" (the "RCA"). Therein, the Plaintiff acknowledged that he had intimate knowledge of Converze's business, acquired by the Defendant, and exploitation of that would adversely affect the Defendant's ability to continue with that business post-sale. The parties, thus, agreed to several restrictions to protect the Defendant's goodwill, relationships with customers and employees, and confidential information. Specifically, the RCA contains a non-competition provision, non-solicitation provisions for employees and customers, and restrictions on confidential information (among other provisions).

**B. The Dispute and Demand**

Less than two years after the 2023 sale, the Plaintiff resigned from his position with the Defendant. The Defendant has since sued the Plaintiff in this Court alleging breaches of the RCA (the "Underlying Action").[7] In the Underlying Action, filed on June 16, 2025, the Defendant alleged the Plaintiff breached the RCA by directly

---

[7] *Genesis CMG Holdings, LLC v. Simplicity Media, LLC*, C.A. No. 2025-0676-SEM [hereinafter "Underlying Action"], D.I. 1.

competing with the Defendant, and actively soliciting the Defendant's clients with the benefit of the Defendant's confidential information (the "Initial Complaint").[8]

After moving to dismiss the Initial Complaint, the Plaintiff, on August 7, 2025, submitted a written demand for the advancement of legal fees incurred in defending the Underlying Action (the "Demand").[9] The Defendant did not respond to the Demand, and, on August 27, 2025, the Plaintiff initiated this action. On September 29, 2025, the Defendant answered the complaint in this action, closing the initial pleadings.

But on the same day it answered the complaint in this action, the Defendant amended its complaint in the Underlying Action (the "Amended Complaint").[10] The redline for the Amended Complaint contains few substantive changes. First, in the Amended Complaint, the Defendant removed any explicit reference to the Plaintiff's alleged use of "confidential information" as defined in the RCA.[11] Second, through the Amended Complaint, the Defendant added detail about the Plaintiff's resignation and the employees and clients the Plaintiff allegedly solicited.[12]

---

[8] Underlying Action, D.I. 1 ¶ 27.

[9] Am. Compl. ¶ 6. The Plaintiff included with the Demand the required undertaking.

[10] Underlying Action, D.I. 13.

[11] *See* Underlying Action, D.I. 13 ([REDLINE VERSION] Plaintiff's First Amended Complaint).

[12] The sufficiency of these allegations, and whether they state a reasonably conceivable claim for relief is pending before me in the Underlying Action The parties have, as of

The Defendant has conceded that it amended the Initial Complaint, replacing it with the Amended Complaint, in direct response to, and to limit or foreclose, the Plaintiff's advancement rights. Undeterred, the Plaintiff, on September 29, 2025, sent a second demand for advancement in response to the Amended Complaint (the "Second Demand").[13] Like with the Demand, the Defendant never responded to the Second Demand and the Plaintiff amended his complaint in this action, on October 7, 2025, to plead as much.

While some of this played out, this action was still assigned to Vice Chancellor Fioravanti. On October 1, 2025, it was reassigned to me.[14] The parties quickly agreed to submit this action to me for a final decision under 10 *Del. C.* § 350 and Court of Chancery Rule 144(g).[15] In doing so, the parties waived the right to seek judicial review of my decision at the trial court level and agreed that my final decision will constitute a decision of the Court of Chancery, appealable to the Delaware Supreme Court subject to the same procedural and substantive standards as are applicable to appeals from decisions of the Chancellor or a Vice Chancellor.

---

November 25, 2025, fully briefed the Plaintiff's motion to dismiss to dismiss the Amended Complaint. Underlying Action, D.I. 17, 19, 20.

[13] Am. Compl. ¶ 9.

[14] The Underlying Action and another related action, C.A. No. 2024-1317 were also pending before Vice Chancellor Fioravanti but were reassigned to me on October 6, 2025.

[15] D.I. 9, 11.

With that streamlining stipulation, the parties expeditiously briefed the Defendant's October 17, 2025 motion to dismiss and the Plaintiff's October 20, 2025 motion for summary judgment.[16] I heard argument on December 3, 2025 and took both motions under advisement.

## II.   ANALYSIS

The parties' competing motions differ in procedural posture. But the standards of review "largely converge where, like here, a dispute turns on issues of contract interpretation. In both cases, a moving party is generally only entitled to a claim-dispositive order on its motion—either for summary judgment or dismissal—where the contract is unambiguous."[17] As such, in determining the proper interpretation of the LLC Agreement, I must "'initially focus solely on the language of the contract itself,' and if the contract language in dispute is unambiguous, then its 'plain meaning alone dictates the outcome.'"[18]

Section 12.5 of the LLC Agreement is unambiguous. It provides:

To the fullest extent permitted by applicable law, Losses incurred by a Covered Person in defending any Actions relating to or arising out of their performance of their duties on behalf of the Company shall, from time to time, be advanced by the Company prior to the final disposition of such Actions upon receipt by the Company of an undertaking by or

---

[16] *See* D.I. 14, 15.

[17] *Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *4 (Del. Ch. July 14, 2009) (citing *VLIW Tech, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003)).

[18] *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006).

> on behalf of the Covered Person to repay such amount if it shall ultimately be determined by a court of competent jurisdiction that the Covered Person is not entitled to be indemnified as authorized in Section 12.4.

Weaving in the defined terms, the Defendant is required to advance expenses incurred by a director or officer (or former director or officer) in defending any actions, suits, or proceedings, even those brought by the Defendant, if (1) the action relates to or arises out of the director or officer's "performance of their duties on behalf of the" Defendant and (2) the Defendant receives a suitable undertaking.

Here, there is no dispute that the Plaintiff is a former director and officer and that he is incurring expenses in connection with the Underlying Action, an action brought by the Defendant. The Plaintiff has also provided the requisite undertaking. The only question before me is whether the Underlying Action relates to or arises out the Plaintiff's performance of his duties on behalf of the Defendant.

At oral argument, the Defendant conceded that, to some extent, the Initial Complaint in the Underlying Action was drafted in such a way that it could be interpreted as related to or arising out of the Plaintiff's performance of his duties on behalf of the Defendant. But the Defendant contends that the Amended Complaint fixed the issue and cut off any post-amendment advancement. I disagree.

**A. The Initial Complaint triggered the Plaintiff's advancement.**

Section 18-108 of the LLC Act grants LLCs broad authority to provide advancement in their operating agreements and I must "give maximum effect to the principal of freedom of contract and to the enforceability of limited liability company agreements."[19]

Here, the Defendant used broad language in dictating the required connection between the action at issue and the covered person's duties relevant to the Defendant's business. The provision covers all actions related to or arising out of the director or officer's performance of their duties on behalf of the Defendant. "Delaware courts recognize the phrases 'relating to' and 'arising out of' as 'paradigmatically broad terms.' This Court has also described the phrase 'relating to' as one of the far-reaching terms often used by lawyers when they wish to capture the broadest possible universe."[20] That far reach unquestionably implicates the Underlying Action, as formed by the Initial Complaint.

**B. The Amended Complaint did not extinguish the Plaintiff's right to advancement.**

The primary dispute is whether the Defendant removed the advanceable claims or issues through the Amended Complaint. It did not.

---

[19] *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Hldg. Co. LLC*, 2004 WL 550743, at *2 (Del. Ch. Mar. 10, 2004).

[20] *Vortex Infrastructure Holdco LLC v. Kane*, 2024 WL 3887117, at *4 (Del. Ch. Aug. 21, 2024), *exceptions denied*, (Del. Ch. 2024), *aff'd*, 345 A.3d 959 (Del. 2025) (cleaned up).

"Delaware law recognizes the ability of a defendant corporation to moot an advancement dispute by removing any [claims] that would trigger an advancement right . . . ."[21] But, this Court looks to substance over form. "The mere relabeling of claims will not support [denying advancement] when the underlying litigation remains substantially the same."[22] "And so, our courts focus not on what label is ascribed to a claim, but rather the conduct underlying it."[23] Here, amendments aside, the underlying conduct complained of in the Amended Complaint still relates to or arises out of the Plaintiff's performance of his duties on behalf of the Defendant. I hold as much for a few reasons.

First, the LLC Agreement expressly includes in the definition of "Covered Persons" former officers and directors. This undermines the Defendant's attempt to draw a firm line between actions arising from pre- versus post-separation conduct. No such line is drawn in the four corners of the LLC Agreement.

Second, even the more limited "by reason of the fact" standard does not support the pre- versus post-separation line the Defendant attempts to draw.

---

[21] *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015); *see also Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *2 (Del. Ch. Jan. 8, 2010) (concluding that a corporation could avoid advancement by representing that it "is not pursuing, and will not pursue" certain pre-merger claims).

[22] *Carr v. Global Payments Inc.*, 2019 WL 6726214, at *4 (Del. Ch. Dec. 11, 2019).

[23] *Keller v. Steep Hill, Inc.*, 2023 WL 5624215, at *9 (Del. Ch. Aug. 31, 2023).

Although the language here is bespoke, the parties agree that the "by reason of the fact" language of 8 *Del. C.* § 145 is comparable.[24]  Under that standard, "if there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' . . . without regard to one's motivation for engaging in that conduct."[25] That can include post-separation conduct if it is rooted in pre-separation responsibilities.

For example, in *Centrella v. Avantor, Inc.*, the plaintiff sought advancement of his expenses in defending an action brought by the company to enforce certain restrictive covenants and enjoin his use of confidential information.[26] The defendant there argued that it did not sue the plaintiff in a covered capacity but instead sued for alleged breaches of personal contracts.[27] This Court rejected that argument, finding it "belie[d] reason" because the restrictive covenants were "inextricably intertwined" with the plaintiff's employment; "[h]aving brought suit to enjoin [the former employee's] use of confidential information that he learned as a . . . employee, and consistent with our law's broad reading of the 'by reason of'

---

[24] *See, e.g., Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *12 (Del. Ch. Sept. 11, 2015) ("I construe the phrase 'related to the fact' to be equivalent to the recognized meaning of 'by reason of the fact' [found in Section 145.]").

[25] *In re Genelux Corp.*, 2015 WL 6390232, at *4 (Del. Ch. Oct. 22, 2015).

[26] 2024 WL 3249274, at *4 (Del. Ch. July 1, 2024), *aff'd*, 341 A.3d 505 (Del. 2025), *and judgment entered*, (Del. Ch. 2024).

[27] *Id.* at *13.

language, . . . [the former employee] was threatened to be made a party, or was made a party, to the Underlying Action by reason of his employment[.]"[28] The same is true here under the broad arising or relating language in the LLC Agreement.

Third, the cosmetic amendments reflected in the Amended Complaint fall short of extinguishing the Plaintiff's rights. Whether amendments are sufficient to extinguish advancement rights requires a substantive review of those amendments. Where the amendments are "largely cosmetic, doing little more than removing language that would tie the claims temporally to the plaintiff's employment[,]"[29] this Court is unlikely to cut off advancement.

Such was the case in *Brown v. LiveOps, Inc.*, where a corporation moved to dismiss a claim for advancement based on proposed amendments. The corporation had sued a former officer and director for violating "its contractual and intellectual property rights by operating a competing business" formed after the individual left the corporation.[30] In doing so, it pled that many of the competitive acts occurred before the individual left the corporation. But, when faced with an advancement

---

[28] *Id.* at *14.

[29] *Carr*, 2019 WL 6726214, at *8.

[30] *Brown v. LiveOps, Inc.*, 903 A.2d 324, 325 (Del. Ch. 2006).

demand, the corporation proposed to amend its complaint in the underlying action to remove all mention of pre-separation conduct from its claims.[31]

This Court conducted a careful review and comparison of the initial and proposed amended complaint. In doing so, it was "clear that the claims alleged [] [we]re inextricably intertwined with [the individual's] position as an officer and director of the company."[32] When discussing the effect that the amended complaint had on advancement, this Court noted that "it would be inequitable to allow [the corporation] to evade advancement by simply crossing out the phrases 'by virtue of his position,' 'through [the individual's] position within [the corporation's] employ,' [and] 'which [the corporation] acquired or maintained during the scope of [the individual's] employment[.]"[33] Because "[t]he gravamen of the underlying complaint [was] that [the individual] had access to proprietary information by reason of the fact that he was a director and officer [] and that he wrongly used that information for his personal benefit," this Court denied the corporation's motion to dismiss the individual's advancement claim.[34]

---

[31] *Id.* at 326.

[32] *Id.* at 328.

[33] *Id.* at 329.

[34] *Id.* at 330.

But substantive amendments can make the difference. For example, in *Carr v. Global Payments Inc.*, this Court cutoff advancement after significant amendments were made in the underlying complaint.[35] Those amendments included removing the entire confidentiality cause of action and any reliance upon the allegedly breached confidentiality agreement. By doing so, the company "explicitly eschew[ed] allegations of a breach of the confidentiality portion of [the contract], and focuse[d] solely on [the individual's] post-employment competition and solicitation activity."[36] The removal of an entire cause of action and abandonment of a separate theory of liability distinguished the matter from *LiveOps*.

Here, the amendments are more akin to *LiveOps* than *Carr*.[37] As previously discussed, the Amended Complaint removed any reference to the Plaintiff's alleged use of "confidential information." But it opted, instead, to support its allegations by naming the specific employees and clients the Plaintiff is purported to have solicited from the Defendant. Although the Amended Complaint purports to clarify that the Defendant is "alleging no pre-separation misconduct,"[38] the solicitation of specific

---

[35] *Carr*, 2019 WL 6726214, at *1.

[36] *Id.* at *7.

[37] *See also Groshoff v. Ayana Bio, LLC*, C.A. No. 2025-0568-SEM, at 58 (Del. Ch. Sept. 3, 2025) (TRANSCRIPT) ("I find this creative pleading fails to take the claims out of the broad advancement provided to Mr. Groshoff. The claims still indirectly arise from the activities of Mr. Groshoff as a covered person under the LLC agreement").

[38] Underlying Action, D.I. 13 ¶ 17.

employees and clients of the Defendant implicates as much. The Defendant alleges that the Plaintiff, swiftly after leaving his official role with the Defendant, solicited and induced fourteen employees and more than three dozen clients.[39] It defies logic to suggest that the Plaintiff did not learn of, form relationships with, or otherwise gain knowledge of these parties through his official capacity with the Defendant. As such, the allegations of solicitation of specific clients and employees are inextricably intertwined with the Plaintiff's former position.

Far from the concessions made in *Carr*, the amendments in the Underlying Action are largely cosmetic. By carefully removing any mention of "confidential information" learned during employment, the Defendant has done "little more than remov[e] the language that would tie the claims temporally to the Plaintiff's employment[.]"[40] Unlike the defendant in *Carr*, the Defendant has not removed any cause of action, abandoned any theory of liability, or added new facts inconsistent with advancement.

The gravamen of the Amended Complaint continues to be that the Plaintiff exploited the access and relationships to clients and employees that he had arising out of the performance of his duties on behalf of the Defendant. Thus, the Underlying

---

[39] *Id.* at ¶¶ 18–19.

[40] *Carr*, 2019 WL 6726214, at *8.

Action, even as limited by the Amended Complaint, is still an "Action" covered under the LLC Agreement's advancement provision; it relates to or arises out of the Plaintiff's performance of his duties on behalf of the Defendant. The Plaintiff is entitled to advancement of his expenses incurred in connection therewith.

### C. The Plaintiff is entitled to fees on fees.

The Plaintiff also seeks fees on fees. "This Court awards fees on fees when a plaintiff successfully shows an entitlement to advancement that wrongfully was withheld by the defendant corporation."[41] Here, the LLC Agreement guaranteed the Plaintiff broad advancement, which the Defendant wrongfully withheld. The Plaintiff is entitled to fees on fees incurred in connection with this proceeding, and for interest thereon under Delaware law.

### III.  CONCLUSION

For the foregoing reasons, the Plaintiff is entitled to advancement under the LLC Agreement and is awarded fees on fees. The Plaintiff's motion for summary judgment is granted and the Defendant's motion to dismiss is denied. The parties shall meet and confer promptly on an implementing order and procedures consistent with *Danenberg v. Fitracks, Inc.*[42]

---

[41] *In re Genelux Corp.*, 2015 WL 6390232, at *6.

[42] 58 A.3d 991 (Del. Ch. 2012).